IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        vs.<br><br>JEREMIAH J. KERBY,<br><br>                    Defendant. | **8:02CR336**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the defendant's motion for compassionate release/sentence reduction under 18 U.S.C. § 3582(c)(1)(A), Filing No. 136. The United States opposes the motion. Filing No. 143. The Court appointed the Public Defender's office to represent defendant and requested that the United States Probation Office ("Probation") file a compassionate release investigation report. Filing No. 138. More than 30 days have passed since Kerby made a request for compassionate release to the Warden, which was denied, thus exhausting his administrative remedies. *Id.*; Filing No. 136-1, Ex. C at 67.

Kerby argues that his youthful age at the time he committed the crimes, the length of the sentence imposed on him, his rehabilitative efforts while in prison, and the existence of the COVID-19 pandemic combine to establish extraordinary and compelling reasons to reduce his sentence. He contends he deserves a sentence reduction because at the time he committed the crimes at issue, he was an immature young man who made irrational and irresponsible choices that he deeply regrets today. He also argues he has

1

rehabilitated himself while incarcerated by taking numerous classes and completing many programs, as shown in Bureau of Prisons ("BOP") records.  Filing No. 138, Ex. A.

The Government opposes the motion, arguing that Kerby has not shown "extraordinary and compelling reasons" as required under § 3582(c)(1)(A).  The government also contends that Kerby is a danger to the community under 18 U.S.C. § 3142(g).  Further, it argues Kerby's action is foreclosed by the Eighth Circuit Court of Appeals' recent case finding that the Sentencing Commission's amendment to the Guidelines that eliminates "stacking" under 18 U.S.C. § $ 924 (c) does not furnish an extraordinary and compelling reason to reduce a sentence.[1]  *See United States v. Crandall*, 25 F.4th 582, 583 (8th Cir. 2022).  Probation also advises against release, noting that Kerby has already had Covid 19 and has been vaccinated.  However, Probation acknowledges that Kerby's SENTRY records, his motion, and letters of support indicate he has matured while in prison.  Filing No. 142, Compassionate Release Investigation Report at 4.

---

[1] Prior to the enactment of the First Step Act, 18 U.S.C. § 924(c) imposed a mandatory minimum sentence of 5 years for a defendant's first § 924(c) conviction, and a mandatory minimum sentence of 25 years "in the case of a second or subsequent" § 924(c) conviction.  *See* Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, § 1005(a), 98 Stat. 2138, 2138–39 (as amended by Pub. L. No. 105-386, 112 Stat. 3469 (1998)).  Under *Deal v. United States*, 508 U.S. 129, 130–36 (1993), the Supreme Court established that the 25-year mandatory minimum enhancement for "second or subsequent" convictions applied to multiple § 924(c) counts charged in a single case, even when that case marked the first time a defendant was ever charged with a § 924(c) offense, creating what is colloquially known as the practice of "§ 924(c) stacking."  *United States v. Chen*, 48 F.4th 1092, 1094 (9th Cir. 2022).  A provision of the First Step Act, § 403(a), negated *Deal* by clarifying that the 25-year enhancement is triggered only by a § 924(c) conviction occurring after the initial § 924(c) conviction "has become final."  *See* First Step Act of 2018, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221–22 (codified at 18 U.S.C. § 924(c)(1)(C)); *Chen*, 48 F.4th at 1094.  "In practice, § 403(a) of the First Step Act ended § 924(c) stacking because first-time offenders no longer receive stacked sentences for multiple § 924(c) convictions in the same proceeding[,]" but Congress limited the application of § 403(a) to defendants who had not yet been sentenced for their § 924(c) convictions, meaning that § 403(a) is non-retroactive.  *Id.*

I.    FACTS

Defendant Jeremiah J. Kerby was convicted in connection with two armed bank robberies—one in Iowa, the other in Nebraska.  Kerby was arrested in Iowa on March 28, 2001, and later charged in the Northern District of Iowa, together with co-defendants Sandy Curtis, Michael Davis, Domanik Tenny, and Justin Copley, with the armed robbery of Wells Fargo Bank in Sioux City, Iowa, in violation of 18 U.S.C. § 2113, and possession of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c), unlawful transportation in interstate commerce, of a stolen vehicle and aiding and abetting such transportation, in violation of 18 U.S.C. §§ 2312 and 2, and conspiracy to violate 18 U.S.C. §§ 2113(a), 2113(d), 924(c), and 2312.  *United States v. Kerby*, No.  01CR4013 ("hereinafter, *U.S. v. Kerby* (Iowa)"), Filing No. 95, Presentence Investigation Report ("Kerby PSR") at 3 (N. D. Iowa Dec. 26, 2001); *Id.*, Filing No. 57, Second Superseding Indictment.

In the Iowa case, Kerby entered a plea of guilty to the bank robbery and firearm counts and the Government dismissed the other charges.  *Id.*, PSR at 4–5.  In the plea agreement, the parties agreed to a Guidelines computation of base offense level 28 to 30 for the bank robbery count (Base Offense Level 20, plus 2 for offense involving financial institution, plus 1 for loss between $10,000 and $50,000, plus at least three for aggravated role, leaving the government free to argue for a 4-level enhancement, plus two for obstruction of justice, and a two-level enhancement for reckless endangerment was to be determined by the court, minus 3 for acceptance of responsibility).  *Id.* at 5.  Probation

had assessed Kerby 15 criminal history points, resulting in Criminal History Category VI.[2] *Id.* at 16.

Judge Donald J. O'Brien sentenced Kerby, under the then-mandatory Guidelines, to 235 months (roughly 12 and a half years) of imprisonment for armed bank robbery, followed by the statutory mandatory minimum consecutive sentence of 84 months (7 years) for brandishing a firearm during a crime of violence. *United States v. Kerby*, No. 01CR4013, Filing No. 90, Judgment (N. D. Iowa Dec. 24, 2001). Kerby argues that, at the time, Judge O'Brien expressed misgivings about the length of the sentence.[3] Filing No. 136, Motion at 2.

At the time of his sentencing for the Iowa bank robbery, the FBI was investigating Kerby in connection with a similar bank robbery in Omaha, Nebraska on March 15, 2001.

---

[2] According to Probation, Kerby first had contact with law enforcement as a seven-year-old (throwing rocks at a garage door). *United States v. Kerby*, No. 01CR4013, Filing No. 95, Kerby PSR at 12. He then had one contact as a 10-year-old for shoplifting a pack of gum. *Id.* at 13. When he was 11 years old, he had contact with law enforcement for theft by unlawful taking, criminal mischief (throwing roofing tar), and shoplifting & habitual truancy. *Id.* He was adjudicated a delinquent for theft by receiving stolen property and flight to avoid arrest, placed in the custody of the Nebraska Department of Social Services, and sent to the Youth Rehabilitation and Treatment Center in Kearney, Nebraska. *Id.* at 13–14. Beginning at age 16, he began being convicted as an adult, resulting in the assessment of criminal history points under U.S.S.G. 4A1.1(c). *Id.* at 14. He was sentenced to one to two years imprisonment for Theft by Receiving Stolen Property at age 17. *Id.* He was sentenced to 30 days jail for resisting arrest, also as a 17-year-old. *Id.* When he was 18 years old, he was sentenced to 16 months in prison for possession of methamphetamine. *Id.* at 15. He was also sentenced to 365 days jail for flight to avoid arrest and criminal trespassing. *Id.* At age 19, Kerby was arrested for theft by receiving stolen property and sentenced to one year in prison. *Id.* When he was 20 years old, Mr. Kerby was arrested for 3rd Degree Assault and sentenced to a 30-day term of imprisonment. *Id.* those convictions resulted in the assessment of 13 criminal history category points. Also, he was assigned 2 criminal history point for committing the instant crime while on probation under U.S.S.G. 4A1.1(d). Kerby's 15 criminal history points placed him in criminal history category VI.

[3] In his *pro se* Motion for sentence reduction, Kerby states:

> In fact, Judge O'Brien a former prosecutor commented, "I think that the Department of Justice has gone overboard for the 88th[,] this is the 89th time [ellipses omitted] But I'm afraid that the testimony has been there, so we're not going to give him acceptance of responsibility, and he's going to get an extra three years because of that, and I may puke when I get out of here, but that's the way it's going to be. [quotation marks omitted] . . . But the Court has ruled that it can't do that much to its own disgust."

Filing No. 136, Motion at 2.

*Id.,* Filing No. 95, Justin Copley PSR ("Copley PSR") at 4.  One of Kerby's co-defendants, Justin Copley, had admitted to committing that robbery with Kerby.  *Id.* at 4, 6.

Kerby was indicted in this Court in October 2002 for the armed bank robbery of Great Western Bank, Omaha, Nebraska, on March 15, 2001, in violation of 18 U.S.C. § 2113, and use of a firearm in connection during a crime of violence, in violation of 18 U.S.C. § 924(c).  Filing No. 1, Indictment.  Kerby entered into a binding Fed. R. Crim. P. 11(c)(1)(C) plea agreement.  Filing No. 61, Plea Agreement.  Kerby agreed to a 120-month (10 years) term of imprisonment consecutive to "all terms of incarceration for which the defendant has presently been ordered to serve," that being the 235 month (nineteen and a half years) sentence that had been imposed in the Northern District of Iowa, for a total sentence of 29 years and 7 months.  *Id.*  The government agreed to dismiss Count II, Brandishing a Firearm During a Crime of Violence (18 U.S.C. § 924(c)).  *Id.*  Kerby was sentenced in accordance with the plea agreement.  Filing No. 58, Judgment.

In entering into the plea agreement, defense counsel would have assumed that, absent the plea agreement, the defendant could have been sentenced to the statutory mandatory minimum of twenty-five years for a second firearms violation under 18 U.S.C. § 924(c), consecutive to the bank robbery charge.  The bank robbery charge carried a statutory maximum of twenty years.  No PSR was prepared in the District of Nebraska, but the PSR in Iowa indicated that the Guideline range for the bank robbery count was 120 months (10 years) to 150 months (12 and a half years).  *See* Filing No. 142, Compassionate Release Investigation at 1; *U.S. v. Kerby* (Iowa), Filing No. 95, Kerby PSR at 19.  Thus, the defendant faced the potential for a very heavy consecutive sentence under the then-mandatory guidelines.  Correspondence in the record from Kerby's counsel in this case indicates that counsel believed that counsel believed the Iowa and

5

Nebraska cases should have been consolidated in one case because both cases were part of a conspiracy to commit crimes as part of a common scheme or plan.  Filing No. 136-1, Ex. D at 89.

The record shows that Kerby's co-defendants Sandra A. Curtis and Justin L. Copley (who also participated in the Iowa bank robbery) were also charged in this district with armed bank robbery and possession or use of a firearm during a crime of violence. Filing No. 1, Indictment.  Curtis entered a plea of guilty to the bank robbery charge and was sentenced to a term of imprisonment of 84 months (7 years), to be served concurrently to the 37-month (three years and one month) sentence imposed in Iowa for aiding and abetting armed bank robbery, followed by a consecutive 84-month (7 years) sentence for aiding and abetting possession of a firearm during crime of violence. Filing No. 88, Judgment; Filing No. 86, Curtis PSR (sealed) at 19.  Copley entered a plea of guilty to an Information charging him with misprision of a felony and was sentenced to imprisonment for thirty-six months (three years) consecutive to the term of incarceration of 40 months (three years and four months) he was then serving on the Iowa bank robbery charge.  Filing No. 90, Copley PSR (sealed) at 12; Filing No. 66, Information; Filing No. 91, Judgment.

Kerby has a long criminal history beginning at the age of 7.  *U.S. v. Kerby (Iowa)*, Filing No. 95, Kerby PSR at 12.  At the time of his sentencing, his criminal history included shoplifting, flight to avoid arrest, possession of methamphetamine, criminal trespassing, and 3rd degree assault.  *Id.* at 12-17; *see infra* at 3 n.2.  Correspondence to the Court from Kerby's mother indicates that Kerby had a difficult childhood.  When he was sentenced for the Iowa robbery, his father was incarcerated in the State of Iowa for a murder conviction.  *U.S. v. Kerby* (Iowa), Filing No. 95, Kerby PSR at 17.  According to

the Kerby, his father had been physically abusive to him and to his mother. *Id.* Following the separation of his parents when he was 9, he remained with his mother until he was "kicked out" at approximately age 12. *Id.* During the defendant's teenage years, he had several juvenile placements which included: the Boys & Girls Home, South Sioux City, Nebraska, for two months; Rivendell Psychiatric Center, Seward, Nebraska, for three months; Boys Reformatory, Kearney, Nebraska, for six months; and he was also placed in foster care in Lincoln, Nebraska. *Id.*

While incarcerated for the bank robberies, Mr. Kerby has participated in the following educational programs according to SENTRY records: beginning, intermediate and advanced drums; personal finance; money management; sport injury prevention; card making; FDIC money smart; Financial Peace University; basic astrology; basic earth and space 1 and 2; power basic biology 1 and 2; comparative politics; physical geology 101; classical mythology 1 and 3; acrylic painting; victim impact; road to reentry; release prep programming; advanced guitar; beginning, intermediate, and advanced leather; web design; reading comprehension; life skills; spinning class; pencil art; speed reading; coronary risks and fitness; wellness AIDS/hepatitis; history of John Adams; introduction to calisthenics; wellness—basic nutrition; wellness—abs and cardio; beginning arts; sports officiating; success on the job; parenting from inside; Microsoft Excel and Word; cabinet making; and beginning drawing. Filing No. 142, Compassionate Release Investigation at 3; *see* Filing No. 136-1, Ex. A at 1-53. Correspondence to the Court indicates he has also completed the BOP's inaugural tattoo removal program and its non-residential drug abuse treatment program and has started taking classes at Pima Community College, earning an "A" for his first semester.

7

Mr. Kerby has had several disciplinary issues or sanctions over the years, generally for relatively minor violations.  Filing No. 142, Compassionate Release Investigation at 3.  Medical records from the BOP reflect the following health issues:  1) Unspecified disease of spinal cord (suspected bulging of intervertebral disc C5-6 and demyelinating disorder strongly suspected) - June 2010; 2) chronic hip pain - December 2013; 3) Tear of medial cartilage or meniscus of knee - August 2010; 4) mild osteoarthritic changes - left elbow deformity - unable to fully extend arm - May 2015; and 5) anterior and posterior labral tear in right shoulder - June 2010.  *Id.* at 2.

BOP records reflect that Kerby was diagnosed with COVID-19 on January 13, 2021, and records report that it was resolved by January 25, 2021.  *Id.*  According to BOP documentation, Mr. Kerby was symptomatic.  *Id.*  On April 22, 2021, Mr. Kerby received dose #1 of the Moderna COVID-19 vaccine.  *Id.*  On May 18, 2021, Mr. Kerby received dose #2 of the Moderna COVID-19 vaccine.  *Id.*

Correspondence to the Court indicates that Kerby's friends and family support his release and his cousin, his aunt, his mother and his ex-wife have all offered to let him reside with them, if released.  Filing No. 136-1, Ex. D at 66, 70–84.  He submits that he has a job offer at the Local 33 Plumbers and Steamfitters' Union in Des Moines, Iowa.  *Id.* at 66.

Kerby was sentenced when he was 20 years old, and he has now served over 21 years of his sentence.  His projected release date is February 11, 2027.  Filing No. 136-1, Ex. C at 67.  He argues that he has grown and matured over the course of his 21 years in prison and states he is more than ready for release and reintegration into society.

II.    LAW

In 2005, the United States Supreme Court found the Sentencing Guidelines are unconstitutional unless they are advisory rather than mandatory. *United States v. Booker*, 543 U.S. 220, 261–63 (2005). "As is well known by now, the Supreme Court's decision in *Booker* marked a major transformation in the law of federal criminal sentencing." *United States v. Mohamed*, 459 F.3d 979, 984–85 (9th Cir. 2006). Since the mandatory Guidelines were abolished in *Booker*, there have been numerous changes to sentencing law, both in the Guidelines and in criminal statutes, generally lessening penalties. *See, e.g., Gall v. United States*, 552 U.S. 38, 50–51 (2007) (post-Booker, sentences should be reviewed for abuse of discretion); *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (district court may conclude that Guidelines' crack cocaine/powder cocaine disparity yields sentence "greater than necessary"); *Spears v. United States*, 555 U.S. 261, 265–66 (2009) ( finding that district courts are entitled to reject and vary categorically from the crack cocaine Guidelines based on a policy disagreement with those Guidelines); *Dorsey v. United States*, 567 U.S. 260, 269 (2012) (noting that Congress enacted the Fair Sentencing Act in 2010, which reduced the sentencing disparity between cocaine base and powder cocaine from 100-to-1 to 18-to-1); *Johnson v. United States*, 576 U.S. 591, 597 (2015) (holding that the residual clause of the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. § 924 (e), which increases the sentence for a firearms offense to a mandatory 15 years to life if the offender has three or more prior convictions for a "serious drug offense" or a "violent felony," is unconstitutional under the void-for-vagueness doctrine); *Welch v. United States*, 578 U.S. 120, 124 (2016) (finding the rule announced in *Johnson* is substantive and applies retroactively); *Beckles v. United States*, 137 S.Ct. 886, 892, 903 n.4 (2017) (declining to extend the rule in *Johnson* to the residual clause

9

of the career offender enhancement in U.S.S.G. 4B1.2 under the advisory Guidelines, but leaving open the question as to whether *Johnson* applied to the mandatory application of the Guidelines); *Borden v. United States*, 141 S. Ct. 1817, 1821–22 (2021) (holding that offenses with a minimum *mens rea* of recklessness are not "crimes of violence" under ACCA) (plurality opinion).  Legislation is presently pending, the EQUAL Act, that would eliminate altogether the disparity in sentencing between cocaine base and powder cocaine.  H.R.1693 - EQUAL Act of 2021117th Congress (2021-2022).

"A district court may not generally modify a term of imprisonment once it has been imposed," except pursuant to a statutory grant of authority.  *Dillon v. United States*, 560 U.S. 817, 824–25 (2010).   The "compassionate release" provision in Section 3582(c)(1)(A) under the First Step Act is one source of such authority.  18 U.S.C. § 3582(c)(1)(A)(i)-(ii).   The provision authorizes relief upon, *inter alia*, a showing of "extraordinary and compelling reasons."  18 U.S.C. § (c)(1)(A)(ii).  In late 2018, the First Step Act amended numerous criminal statutes to promote rehabilitation of prisoners and unwind decades of mass incarceration.  Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019).  The Congressional purpose behind the provision at issue here, 18 U.S.C. § 3582(c)(1)(A), is reflected in its title, "Increasing the Use and Transparency of Compassionate Release."  First Step Act, § 603(b), 132 Stat. at 5239.

The First Step Act's modification of 18 U.S.C. § 3582(c)(1)(A) now provides an avenue for a defendant, rather than the Bureau of Prisons ("BOP") to seek a sentence reduction directly from the Court.  *United States v. McGraw*, No. 02-CR-00018, 2019 WL 2059488, *1 (S.D. Ind. May 9, 2019).  In particular, instead of relying on the Director of the BOP to determine whether "extraordinary and compelling reasons" exist to support  a sentence reduction and to file an 18 U.S.C. § 3582(c)(1)(A) sentence reduction motion,

district courts today can resentence a defendant "upon motion of the defendant" as long as a defendant first files a request for a sentence reduction motion with the warden of the facility. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Beck*, 425 F. Supp. 3d 573 (M.D.N.C. 2019). Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, a district court is allowed "to reduce a sentence, after considering the factors set forth in 18 U.S.C. § 3553(a),[4] if it finds that 'extraordinary and compelling reasons warrant such a reduction,' and that 'such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission.'" *Crandall*, 25 F.4th at 583 (quoting 18 U.S.C. § 3582(c)(1)(A)).

Congress directed the Sentencing Commission to provide guidance on what constitutes "extraordinary and compelling reasons, stating, however, that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see United States v. McCoy*, 981 F.3d 271, 286 n.9 (4th Cir. 2020). "There is no indication that successful rehabilitation efforts may not be considered as one among other factors under § 3582(c)(1)(A)(i)." *Id.*

The Sentencing Commission's definition of "extraordinary and compelling reasons" is found in U.S.S.G. 1B1.13, cmt. n.1(A)-(D). That policy statement enumerates a set of circumstances that qualify as "extraordinary and compelling" for purposes of § 3582(c)(1)(A), including medical condition, age, family circumstances, and other reasons, but the Commentary does not suggest the list is exclusive. U.S.S.G. 1B1.13, cmt. n.1(A)-(D). Application Note 1(D), titled "Other Reasons," is a catch-all provision, noting that the

---

[4] In 18 U.S.C. § 3553(a), Congress instructed the sentencing judge to consider (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution. *Rita v. United States*, 551 U.S. 338, 338 (2007).

[BOP] may determine "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § lB1.13, application note (1)(D).

The reference to the BOP in these policy statements appears to be relic of the prior procedure that is now inconsistent with the First Step Act's amendment of § 3582(c)(l)(A).[5] *McCoy*, 981 F.3d at 281–82.  The majority of Circuit Courts to reach the issue have held that § 1B1.13 no longer constrains district courts in considering motions for compassionate release.  *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020); *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021) (holding district courts are not limited to the grounds for relief enumerated in the Sentencing Commission's policy statement, which are not binding on district courts considering prisoner-initiated motions under § 3582(c)(1)(A)); *United States v. Long*, 997 F.3d 342, 355 (D.C. Cir. 2021) (holding that section 1B1.13 "is not 'applicable' to defendant-filed motions for compassionate release under the First Step Act," because it "applies only to motions . . . filed by the Bureau of Prisons"); *United States v. Shkambi*, 993 F.3d 388, 392–93 (5th Cir. 2021);

---

[5] The Sentencing Commission lacked a quorum from January 2019 until August 2022, so it has been unable to promulgate a policy statement that applies to such motions.  *United States v. Jenkins*, 50 F.4th 1185 (D.C. Cir. 2022).  *See also United States v. Cantu-Rivera*, No. CR H-89-204, 2019 WL 2578272, at *2 (S.D. Tex. June 24, 2019) (S.D. Tex. Jun. 24, 2019) (finding authority to determine that defendant was entitled to relief under the catch-all provision in the commentary to U.S.S.G. 1B1.13 because the "current policy statement predates the enactment of the First Step Act and is not likely to be amended within the foreseeable future due to a lack of a sufficient number of serving members of the Sentencing Commission."); *Beck*, 425 F. Supp. 3d 573, at *6 (M.D.N.C. June 28, 2019} ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(l)(A)(i)."). Courts can infer that the Commission would apply the same criteria, including the catch-all provision of Application Note 1(D), in the wake of the First Step Act's amendment to § 3582(c)(1)(A), and that courts may use Application Note 1(D) as a basis for finding extraordinary and compelling reasons to reduce a sentence. *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019).  Other courts have concluded that the Commission's failure to amend Guideline U.S.S.G. 1B1.13 and related Commentary following the First Step Act does not preclude a court from acting on motions for sentence reductions or using the catch-all provision in Application Note 1(D).  *See United States v. Cantu*, 423 F. Supp. 3d 345 (S.D. Tex. 2019); *United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 401 (E.D. Pa. 2020).

*United States v. Jones*, 980 F.3d 1098, 1109–11 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020); *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021); *United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021); *but see United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021) (holding that "district courts may not reduce a sentence under 18 U.S.C. § 3582(c)(1)(A) unless a reduction would be consistent with [§] 1B1.13.").  The Eighth Circuit has not weighed in on the issue.  *See Crandall*, 25 F.4th at 584 (acknowledging issue but explaining that "it is unnecessary in this case to address whether a district court is constrained by the policy statement at U.S.S.G. 1B1.13 in determining what circumstances are 'extraordinary and compelling'").

As amended November 1, 2018, U.S.S.G. 1B1.13 adds that the court should reduce the sentence only if the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).[6]  18 U.S.C. § 3582(c)(1)(B).  In addition, a motion for relief under 18 U.S.C. § 3582(c)(1)(A)(i) requires a court to consider other factors that may warrant relief, including the defendant's rehabilitation, the sentencing disparities with his co-defendants, and other factors bearing on the person the offender is today.  *Cantu-Rivera*, 2019 WL 2578272, at *2 (the court considered rehabilitation and the "unwarranted [sentencing] disparities among defendants" in determining resentencing was appropriate).

Congress has only placed two limitations directly on extraordinary and compelling reasons:  the requirement that district courts are bound by the Sentencing Commission's

---

[6] Under 18 U.S.C. § 3142(g), the Court must consider four factors in determining whether the defendant might present a danger:  (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  18 U.S.C. § 3142(g)(1)–(4).

policy statement . . . and the requirement that '[r]ehabilitation . . . alone' is not extraordinary and compelling." *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022). "Neither of these rules prohibit district courts from considering rehabilitation in combination with other factors." *Id.*; *see* 18 U.S.C. § 3582(c)(1)(A); 28 U.S.C. § 994(t).

"It is only when Congress or the Constitution limits the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence, that a district court's discretion to consider information is restrained." *Concepcion v. United States*, 142 S.Ct. 2389 (interpreting the First Step Act and holding that the statute allows district courts to consider intervening changes of law or fact, including the defendant's rehabilitation, in exercising their discretion to reduce a sentence pursuant to the Act). "A district court's decision 'remains bounded by the limits Congress has set.'" *See United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022) (declining "to interpret § 3582(c)(1)(A) inconsistently with Congress's decisions to make its amendment to § 924(c)'s stacking provision prospective and to have rehabilitation alone not serve as a justification for early release") (citing *Concepcion*, 142 S.Ct. at 2404)). In *Concepcion*, the Supreme Court remarked on the "venerable tradition of discretion," noting that '[o]f course there are differences between [initial sentencings and sentence modification proceedings], but the feature common to both is that only Congress and the Constitution limit the historic scope of district courts' discretion." *Concepcion*, 142 S.Ct. at 2401 n.4. "The text of the First Step Act does not so much as hint that district courts are prohibited from considering evidence of rehabilitation, disciplinary infractions, or unrelated Guidelines changes." *Id.* at 2401; *see also Pepper v. United States*, 562 U.S. 476, 491 (2011) (noting that postsentencing rehabilitation may be highly relevant to several of the § 3553 factors).

Another change brought about by the First Step Act is that Section 608 of the Act specifically states that the term "youth" will be defined as follows:

> In this title, the term 'youth' means a prisoner (as such term is defined in section 3635 of title 18, United States Code, as added by section 101 (a) of this Act) who was 21 years of age or younger at the time of the commission or alleged commission of the criminal offense for which the individual is being prosecuted or serving a term of imprisonment, as the case may be.

First Step Act of 2018, § 608(c), 132 Stat. at 5245; *see Cotton v. United States*, No. 2:08-CR-87, 2022 WL 3050007, at *5 (E.D. Va. Aug. 2, 2022)

The Supreme Court has acknowledged that youthful chronological age and its hallmark features of immaturity, impetuousness and failure to appreciate risks and consequences affect an offender's culpability and should lessen the severity of a sentence. *See, e.g., Roper v. Simmons*, 543 U.S. 551, 569–70 (2005)(declaring capital punishment cruel and unusual as to juveniles/youths); *Graham v. Fla.*, 560 U.S. 48, 82 (2010) (finding life without parole was cruel and unusual punishment for non-homicide crimes committed by juveniles/youths); *Miller v. Alabama*, 567 U.S. 460, 469 (2012) (summarizing precedent establishing that "children are constitutionally different from adults for purposes of sentencing" because "juveniles have diminished culpability and greater prospects for reform"). "It is well established that a petitioner's relative youth at the time he committed an offense is a factor the Court may consider in deciding whether 'extraordinary and compelling reasons' justify relief." *Cotton*, 2022 WL 3050007, at *5; *see McCoy*, 981 F.3d at 284; *see also Bellamy v. United States*, 474 F. Supp. 3d 777, 785 (E.D. Va. 2020) ("A petitioner seeking compassionate release may offer a combination of factors to establish extraordinary and compelling reasons for a sentence reduction, including relative youth at the time of the sentence.").

In the Eighth Circuit, a non-retroactive change to the Guidelines, such as the policy statement eliminating stacking under § 924(c) cannot be an extraordinary and compelling circumstance that justifies compassionate release. *Crandall*, 25 F.4th at 585 (rejecting "§ 924(c) stacking" as an extraordinary and compelling circumstance); *see also United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021); *but see United States v. McGee*, 992 F.3d 1035, 1048 (10th Cir. 2021) (nonretroactive changes to mandatory minimums cannot, standing alone, create extraordinary and compelling circumstances, but in combination with a defendant's unique circumstances can constitute "extraordinary and compelling reasons" for sentence reduction); *Andrews*, 12 F.4th at 261-62 (3d Cir. 2021) (although the non-retroactive changes could not amount to extraordinary and compelling reasons for purposes of § 3582(c)(1)(A), the current sentencing landscape may be a legitimate consideration for courts at the next step of the analysis when they weigh the § 3553(a) factors), *cert. denied*, 142 S. Ct. 1446 (2022); *McCoy*, 981 F.3d at 281 (holding that district courts may consider non-retroactive changes to penalty provisions, in combination with other factors, when determining whether extraordinary and compelling reasons for compassionate release exist in a particular case); *United States v. Maumau*, 993 F.3d 821 (10th Cir. 2021) (affirming a finding of extraordinary and compelling reasons based on the length of his "stacked" sentence under § 924(c) in combination with the defendant's youth at the time of sentencing).

During the COVID-19 pandemic, courts have found extraordinary and compelling reasons for relief "when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (collecting cases).

III.   DISCUSSION

The Court first finds that there has been no showing that the defendant will pose a danger to the community if released.  That assertion by the government is based only on the seriousness of the crimes—armed bank robberies—for which he was sentenced and on the severity of the defendant's criminal history category, which is reserved for only the most culpable defendants.  To adopt the philosophy that any offender who commits a serious or violent crime is categorically a danger to the community would make the prospect of release or a lightened sentence for "extraordinary and compelling circumstances" a nullity.  Though the defendant has been disciplined several times over the course of his lengthy incarceration, none of those infractions were particularly violent or heinous.  The Court finds Kerby's criminal history category is overstated.  His criminal history calculation assessed criminal history points for crimes for which he was sentenced as an adult, although he was a juvenile when he committed the crimes.  *See United States v. Bailey*, 547 F. Supp. 3d 518, 524 (E.D. Va. 2021) (granting compassionate release after considering, in part, that petitioner had been incarcerated "well over half his life and virtually all of his adult life"); *United States v. Wilkerson*, No. 5:96cr167, 2021 WL 1062353, at *3 (E.D.N.C. Mar. 19, 2021) (same).  Though Kerby's criminal history is somewhat concerning, the Court recognizes in the greater context that Kerby developed some of his criminal record as a juvenile and has spent more than half of his life incarcerated.

Kerby was sentenced pursuant to a plea deal that was offered against the backdrop of the mandatory sentencing Guidelines.  His sentencing judge in the Iowa case expressed misgivings about the length of the nineteen-and-a-half-year sentence in that case.  Kerby was subject to the prospect of a twenty-five-year consecutive sentence on

top of his sentence for the underlying charge. Undoubtedly, Kerby would have had more bargaining leverage in an advisory Guidelines regime.

The Court agrees with Kerby that *Crandall*, 25 F.4th at 583, is not a bar to relief. This case does not involve multiple § 924(c) counts charged in a single case, so *Crandall* has no application here. Kerby was sentenced for one count of robbery under a plea agreement. Though the plea agreement was entered into against the backdrop of the sentencing Guidelines, the nonretroactive amendment to 924(c) would not affect Kerby's sentence. This case is not about "stacking," the policy statement at issue is the catch-all provision of U.S.S.G. 1B1.13. Though prior to the First Step Act, the policy statement limited the determination to the BOP before the First Step Act, it no longer makes sense to so limit the directive. The Court finds the Eighth Circuit would join all of the other Circuits in finding that catch all's limitation to motions filed by the BOP is no longer in force.

Kerby does not argue that he is particularly susceptible nor at a particularized risk of contracting COVID-19 at his facility. He has already contracted a symptomatic case of COVID-19 and has been vaccinated twice. Nevertheless, the harsh reality is that the pandemic is not over, and incarcerated individuals face heightened risks and have little opportunity to mitigate those risks. Accordingly, the pandemic factors into the Court's decision and weighs in Kerby's favor in some small degree, though it is not enough, on its own to amount to an extraordinary and compelling reason for a sentence reduction.

In consideration of the 3553 factors, the court finds a total sentence of over 29 years is longer than necessary to achieve "the overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary,'" to comply with the goals of sentencing as set forth in § 3553(a)(2). *Pepper*, 562 U.S. at 491. With respect to the

18

nature and circumstances of the offense, Kerby's offense is unquestionably serious. Kerby admits that he deserved a significant sentence. The circumstances of the offense, however, show recklessness and impulsivity rather that high-level or sophisticated planning. Kerby's criminal conduct occurred more than twenty years ago. The Court finds the seriousness of the offense is reflected in the time that Kerby has already served.

When considering the history and characteristics of the defendant, the Court first considers his age at the time of the offense. Under the mandatory Guidelines, age was not a factor that Courts could consider in sentencing a defendant.[7] Emerging brain research shows that the brains' executive function capabilities do not fully develop until a young man is in his twenties. Also, the record shows that the defendant had an unstable upbringing and home life. As noted above, Kerby's criminal record was somewhat overstated. He has spent more than half of his life in prison. The Court finds Kerby has availed himself of numerous rehabilitative programs and has made remarkable progress. His conduct since his initial sentencing provides the most up-to-date picture of Kerby's "history and characteristics." The picture that emerges is no longer that of an immature young man who made irrational and irresponsible choices, it is that an individual who seeks to better himself and has matured and changed in the course of his lengthy incarceration.

Though rehabilitation alone is not considered an extraordinary and compelling circumstance, it can be considered with other extraordinary and compelling reasons. Congress' use of the modifier "alone" in § 994(t) signifies that that rehabilitation can be

---

[7] When the Guidelines were mandatory age normally could not be considered at sentencing. U.S.S.G. 5H1.1 (1992) ("Age (including youth) is not ordinarily relevant in determining whether a departure is warranted."); *see also United States v. Shoupe*, 929 F.2d 116, 120 (3d Cir. 1991) ("Although this policy statement[, Section 5H1.1,] does not completely prohibit departures based upon age, it proscribes such departures except in extraordinary circumstances.").

used in tandem with other factors to justify a reduction.  The evidence of Kerby's postsentencing rehabilitation is relevant to "the history and characteristics of the defendant" under § 3553(a)(1), as well as to the to "the need for the sentence imposed" to serve the general purposes of sentencing set forth in § 3553(a)(2)—in particular, to "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training . . . or other correctional treatment in the most effective manner." §§ 3553(a)(2)(B)-(D).

Kerby's utilization of the classes and enrichment opportunities while incarcerated shows that he has matured while in prison.  That finding is supported by numerous letters of support in the record.  Kerby has shown he has numerous people committed to assisting him with all aspects of his reentry so that he can be a productive member of society.  He has shown he has a job and a place to live on his release.  Also, the Court notes that he will also be subject to a period of five years of supervised release, which will assist him in his transition and serves to mitigate whatever risk there may be in reducing Kerby's sentence.

The Court must also consider the need to avoid sentencing disparities.  Though Kerby may have been more culpable than his codefendants, the difference in culpability does not warrant a sentence three or four times as long as either of them.  Circumstances that contributed to the disparity are the mandatory consecutive sentences imposed under § 924(c) and the fact that the crimes in Nebraska and in Iowa were not consolidated, although they appear to be part of the same crime spree.  Kerby states that both of his codefendants were released in 2008.

Kerby's youth at the time of the commission of the offense is the most important factor in determining whether extraordinary and compelling reasons support a sentence reduction.  He has served a large portion of his sentence and has shown commendable rehabilitation while in prison.  Kerby has shown extraordinary and compelling reasons for release due to his youth at the time he committed the offense, the length of his sentence, the disparity between his sentence and those of his co-defendants, and his remarkable rehabilitation.  None of these reasons alone is extraordinary and compelling.  Taken together, however, they constitute reasons for reducing his sentence that are "extraordinary," that is "[b]eyond what is usual, customary, regular, or common," and "compelling," that is, reasons "so great that irreparable harm or injustice would result if [the relief] is not [granted]."  Extraordinary, Black's Law Dictionary (11th ed. 2019); Compelling Need, Black's Law Dictionary (11th ed. 2019).  Overall, the Court finds that the § 3553(a) factors weigh in Kerby's favor.  A reduction in his sentence will not undercut respect for the law nor the need to afford adequate deterrence.  He therefore qualifies for compassionate release.

Kerby has been in custody for over twenty-two years.  He has spent more than half of his life in prison, not counting the time he spent in juvenile facilities.  The court finds that the over twenty-two years Kerby has served are sufficient to satisfy the purposes set forth in § 3553(a).

A reduced sentence of time served with a sufficient period of supervised release surely reflects the seriousness of his crime, promotes respect for the law, and is a sufficiently just punishment that adequately serves the purposes of deterrence for both Kerby and others.  The court finds that Kerby presently does not pose a substantial threat to the public.  Kerby's conduct while incarcerated shows that he has taken advantage of

educational and vocational training.    Inasmuch as the court is satisfied that compassionate release is consistent with the factors set forth in § 3553, it finds that Kerby is entitled to relief under 18 U.S.C. § 3582(c).

IT IS ORDERED that:

1.      The defendant's motion for compassionate release (Filing No. 136) is granted.

2.      Kerby's sentence will be reduced to time served, to be released by the Bureau of Prisons on or before **January 9, 2023**, followed by a five year period of Supervised Release subject to the same terms and conditions previously imposed.

3.      An amended Judgment and Committal will issue.

Dated this 9th day of November, 2022.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge